OREN BITAN (SBN: 251056)
**BUCHALTER**
A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA  90017-2457
(213) 891-0700
Email:  obitan@buchalter.com

Attorneys for Plaintiff PAYCHEX ADVANCE LLC
DBA ADVANCE PARTNERS

WILLIAM C. MORISON (No. 99981)
wcm@morison.law
BRIAN E. SIMS (No. 127835)
bes@morison.law
**MORISON LAW, LLP**
3478 Buskirk Avenue, Suite 342
Pleasant Hill, CA 94523
Telephone: (925) 937-9990
Facsimile: (925) 937-3272

Attorneys for Defendant
DEPLOY HR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAYCHEX ADVANCE LLC DBA ADVANCE PARTNERS,<br><br>Plaintiff,<br><br>v.<br><br>DEPLOY HR, INC.,<br><br>Defendant. | No.  3:21-cv-04685-WHO<br><br>JOINT CASE MANAGEMENT CONFERENCE STATEMENT<br><br>Date:  October 26, 2021<br>Time:  1:30 PM<br>Place:  Courtroom 5 |

Counsel for the parties met and conferred pursuant to Federal Rules of Civil Procedure rule 26(f) on September 15, 2021 and submit the following joint case management conference statement.

I.  JOINT CASE MANAGEMENT CONFERENCE STATEMENT

    1.  <u>Jurisdiction and Service</u>

The Court has original jurisdiction over this action pursuant to 28 U.S.C. section 1332.

Complete diversity of citizenship between the parties exists, and the amount in controversy exceeds $75,000. All defendants have been served and have appeared.

2. Facts

A. Plaintiff's Statement of Facts

Paychex is engaged in the business of providing operating capital to businesses throughout the United States. The mechanism by which Paychex is able to fund business operations for other companies it to purchase the right to receive payments on accounts receivable. Generally speaking, Paychex enters into a Factoring and Security Agreement with a company by which Paychex agrees to pay the company a percentage of an invoice in exchange for taking an assignment of the account receivable. In addition to taking the assignment of the account receivable, Paychex takes a security interest in the account receivable under article nine of the Uniform Commercial Code. Through these types of factoring agreements, companies are able to have more stable cash flow and achieve great sophistication in their A/R management, which is vital for economic growth and prosperity. These types of factoring agreements are a well-recognized form of asset-based financing.

In February 2011, Advance Payroll Funding ("APF") entered into a Factoring and Security Agreement ("FSA") with PEI Staffing, LLC, a Maryland limited liability company ("PEI"). Pursuant to the FSA, PEI agreed to offer to sell exclusively to APF all of its Accounts – defined as "a right to payment of a monetary obligation based upon [PEI's] ordinary course of business" – without recourse.

On or about December 22, 2015, APF and Paychex entered into an agreement whereby Paychex acquired all of APF's business ("Transaction"). Pursuant to the Transaction, Paychex acquired and assumed all of APF's rights and obligations under the FSA.

On or about July 1, 2017, PEI and Deploy entered into two agreements. The first agreement was a Subcontract Supplier Agreement ("SSA") whereby PEI agreed to "supply qualified Personnel to [Deploy] for placement at [World Class Distribution, Inc.] to perform the requested services ("Services") at prices mutually agreed on by [Deploy] and [PEI] and as set forth in Assignment Orders." Paychex acquired all rights to monies due and owing by Deploy to PEI under the SSA by virtue of the Transaction.

The second agreement was a Management Services Agreement ("MSA") whereby, "[o]n request and for a fee, [Deploy] shall make sufficient funds available for the processing of [PEI's] payroll and any other expenses."

By letter dated June 23, 2017, Paychex notified Deploy that Paychex was the owner of PEI's present and future accounts, and that Paychex perfected its interest in the assigned accounts by filing a UCC-1 financing statement pursuant to the applicable provisions of the Uniform Commercial Code. The June 23, 2017 letter directed Deploy to make payments on PEI's accounts to Paychex.

PEI rendered services to Deploy pursuant to the SSA having a total value of $1,088,615.00 (the "Obligation"). Following the incursion of the Obligation, Paychex demanded and made efforts to collect on the Obligation from Deploy.

In response, Deploy rejected and rebuffed Paychex' efforts to collect on the Obligation, asserting that it is entitled to withhold said funds from PEI and, in turn, from Paychex pursuant to the terms and conditions of the SSA. Specifically, Deploy alleges that PEI breached the SSA as a result of its failure to 1) "to maintain general liability or public liability insurance and ensure coverage was afforded plaintiff as an additional insured under such insurance"; and 2) "defend, indemnify and hold harmless plaintiff" with regard to certain underlying actions. As a result of said alleged breaches, Deploy takes the position that it has no obligation to tender payment to PEI pursuant to the SSA. Deploy's allegations are the subject of an action currently pending in this Court entitled *Deploy HR, Inc v. PEI Staffing, LLC*, United States District Court for the Northern District of California, Case No. 3:19-cv-06061-WHO ("Indemnity Action").

Paychex is informed and believes and thereon alleges that notwithstanding any fact and/or allegation which may be proven in the Indemnity Action, pursuant to UCC 9-607(a)(3), Paychex, as PEI's secured creditor, is entitled to enforce Deploy's Obligation to PEI because the Obligation secures in part PEI's debt to Paychex. The unpaid amount of the Obligation remains due and owing to Paychex, therefore, as PEI's assignee pursuant to UCC 9-607. The unpaid amount of the Obligation which remains outstanding as of the date of the filing Paychex's First Amended Complaint is $1,088,615.00 plus interest.

B.  Defendant's Statement of Facts

Defendant Deploy HR, Inc. ("Deploy") is in the business of providing staffing as well as on site management, administrative and support services. Deploy and third party PEI Staffing, LLC ("PEI"), entered into two agreements. Under the first agreement, the "Staffing and Services Agreement" ("SSA") PEI agreed to provide personnel to Deploy for placement at a client's distribution center for a fee, and PEI agreed to insure, defend, and indemnify Deploy, as well as to provide insurance coverage for Deploy as an additional insured on PEI's insurance policies. Under the second agreement, the Management Services Agreement ("MSA") Deploy agreed to provide management, administrative and support services to PEI for a fee. Both agreements are nonassignable except in writing signed by the parties. At no time did Deploy agree that either agreement could be assigned.

Paychex originally alleged that PEI entered into two agreements with third party Advance Payroll Funding ("APF"). Under the first agreement, the Factoring Security Agreement ("FSA"), PEI agreed to *offer* to sell its accounts to APF for a purchase price, and APF has the right to purchase accounts it determines to be Eligible Accounts. Under the second agreement, the "Addendum" to the FSA, APF agreed to advance $1,088,615 to PEI, and PEI agreed to repay the amount by allowing APF to deduct $1500 per week from PEI's weekly funding under the FSA. Paychex's first amended complaint ("FAC") omits the "Addendum", asserting simply that Deploy owes $1,088,615 to PEI under the SSA and that Paychex is entitled to that sum "by virtue of the Transaction" as PEI's assignee under the SSA.[1] Nevertheless, in neither the original complaint nor the FAC does Paychex affirmatively allege that APF exercised its alleged right under the FSA to purchase any purported account held by PEI against Deploy.

Paychex's FAC purports to allege claims against Deploy under California law for "open account", "services rendered", and "breach of contract". All of Paychex's claims depend on PEI's alleged assignment of the SSA to APF (and Paychex's alleged purchase of APF's rights via

---

[1] As Deploy pointed out in its motion to dismiss, PEI potentially owes funds to Deploy under the MSA, not the other way around. The FAC does not repeat the original complaint's allegation that Deploy owes funds to PEI under the MSA. Nevertheless the FAC alleges the existence of the MSA, to no apparent end. Deploy intends to move to strike the allegations referencing the MSA.

the "Transaction") even though the SSA is nonassignable except in writing signed by the parties. Paychex does not allege the SSA was assigned according to its terms. Further, the FAC fails to allege that APF actually purchased any "account" between PEI and Deploy. Further, even if the alleged assignment was valid (it is not) Deploy may assert against Paychex any defenses or claims Deploy has against PEI. UCC 9-404 (a).

Deploy filed an administrative motion to relate the present case ("*Paychex v. Deploy*") to an earlier-filed case in this District, *Deploy HR, Inc. v. PEI Staffing, LLC*, No. 19-CV-06061-WHO ("*Deploy v. PEI*") because both cases involve the same parties, Deploy and PEI Staffing, LLC ("PEI"), and concern substantially the same occurrences, namely the SSA and claims made by both parties against the other under that agreement. In *Deploy v. PEI*, Deploy seeks, *inter alia*, to enforce a provision of the SSA against PEI that required PEI to obtain insurance on Deploy's behalf and to indemnify and defend Deploy, while PEI's counterclaim seeks to enforce an alleged obligation by Deploy to pay fees to PEI. Deploy's defenses to PEI's counterclaim include, *inter alia*, PEI's breach of the SSA.[2] In *Paychex v. Deploy*, Paychex originally alleged, *inter alia*, that it holds the rights to assert a claim against Deploy to collect PEI's account against Deploy under the SSA, regardless of the outcome of Deploy's claims in *Deploy v. PEI*. *Deploy v. PEI* was expressly referenced in Paychex's original complaint.[3] Both cases involve the same sum ($1,088,615). The Court granted Deploy's motion to relate the cases over PEI's opposition.

*Deploy v. PEI* arises from two underlying cases (one for wrongful death and the other for insurance coverage) venued in Pennsylvania and Maryland, respectively.

3. Legal Issues

Paychex alleges that it has a clear claim and evidence against Deploy for damages accrued as a result of defendant's conduct. Paychex alleges that Deploy may have a claim against a 3rd party for indemnity, however this potential indemnification claim does not change Deploy's

---

[2] Moreover, Deploy has recently discovered new facts that show PEI and its owner, David Epstein, committed fraud, provided a fraudulent certificate of insurance, and committed other violations, including causing Deploy to make payments to Epstein or a family member rather than to PEI.

[3] Should Deploy's motion to dismiss not be granted in *Paychex v. Deploy,* Deploy intends to name PEI as a third-party defendant seeking indemnity for Paychex's claims.

liability to Paychex for the Obligation. Deploy believes that Paychex will not be able to state a claim upon which relief may be granted. In the event that Paychex is able to state a claim, Deploy denies the substance of Paychex's allegations and will name PEI as a third-party defendant seeking indemnity for Paychex's claims.

4. Motions

Deploy filed a motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted. That motion was set for hearing on October 28, 2021, but on October 13, 2021, Plaintiff filed a First Amended Complaint, thereby mooting Deploy's motion. Deploy intends to file a further motion to dismiss. Deploy believes that dispositive motions may be appropriate and, if not dispositive, may narrow the issues in the case.

5. Amendment of Pleadings

While Deploy's motion to dismiss was pending, Plaintiff filed a First Amended Complaint on October 13, 2021. Deploy intends to file another motion to dismiss. If the FAC survives Deploy's motion, Deploy will name PEI as a third-party defendant. Paychex believes that Deploy will not be successful in a motion to dismiss.

6. Evidence Preservation

Counsel for the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and confirm that they have met and conferred pursuant to Federal Rules of Civil Procedure rule 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. The parties do not anticipate any issues regarding electronically stored information. All electronic files may be provided in portable document format (PDF).

7. Disclosures

The parties will make their initial disclosures pursuant to Federal Rule of Civil Procedure Rule 26 no later than 14 days after the October 27, 2021 Case Management Conference.

8. Discovery

No discovery has been conducted to date.

9. <u>Class Actions</u>

This is not a class action.

10. <u>Related Cases</u>

This case is related to *Deploy v. PEI*, No. 19-CV-06061-WHO.

11. <u>Relief</u>

Paychex seeks damages for the recovery of $1,088,615 advanced to PEI, legal fees, expenses, and costs. Deploy seeks to have the action dismissed in its entirety. Failing that, Deploy will seek to have PEI indemnify Deploy for any purported liability that Paychex may establish.

12. <u>Settlement and ADR</u>

There have been no ADR efforts to date. In the event Deploy's motion to dismiss is denied, the parties are agreeable to ADR. Deploy prefers a settlement conference before a magistrate judge but has no objection to ADR Services or JAMS if the parties agree to participate in private mediation and can agree on a mediator.

13. <u>Consent to Magistrate Judge for All Purposes</u>

Deploy does not consent to the appointment of a Magistrate Judge for all purposes.

14. <u>Other Reference</u>

The parties do not believe that this action is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15. <u>Narrowing of Issues</u>

Should Deploy's motion to dismiss be denied, Deploy intends to file a dispositive motion which may also serve to narrow or eliminate issues. The parties are amenable to meeting and conferring in advance of trial to stipulate, if possible, to issues of uncontested fact and authenticity of documents.

16. <u>Expedited Trial Procedure</u>

The parties do not believe that this is the type of case that can be handled under the Expedited Trial Procedure of General Order No. 64, Attachment A, based on the need for anticipated discovery and motion practice, among other factors.

17. Scheduling

The parties' proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial are set forth in Section II.1 below.

18. Trial

Paychex demanded a jury trial. Deploy has not yet answered.

19. Disclosure of Non-Party Interested Entities

Paychex has filed a Certification of Interested Entities or Persons that states in pertinent part:

    1. Paychex is a wholly owned subsidiary of Paychex Holdings, LLC;

    2. The parent corporation of Paychex Holdings, LLC is Paychex, Inc.; and

    3. Paychex, Inc. is a publicly traded corporation.

Deploy has filed a certification of interested entities and persons stating in pertinent part that: "the undersigned certifies that as of this date, other than the named parties, there is no such interest to report."

20. Professional Conduct

Counsel for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

21. Other Matters

The related case, *Deploy HR, Inc. v. PEI Staffing*, Case No. 3:19-cv-6061-WHO (*Deploy v. PEI*), was stayed by stipulation of the parties because resolution of the underlying insurance coverage case, *Philadelphia Indemnity Insurance Company v. Deploy HR, Inc., et al.*, Case No. C03CV19001838, in the Circuit Court for Baltimore County, Maryland, could moot the issues in *Deploy v. PEI*. Because *Deploy v. PEI* and this case involve the same sum of money and Paychex's alleged rights in this case are derivative of PEI's alleged rights as asserted in its counterclaim in *Deploy v. PEI*, Deploy believes this case should also be stayed.

BN 47359778v1

MORISON LAW, LLP

## II. JOINT REPORT IN COMPLIANCE WITH FRCP 26(f)(2)

### 1. Deadlines for Discovery, Pleading and Trial

Subject to Deploy's motion to dismiss and the outcome of that motion, the parties propose that they complete their Federal Rules of Civil Procedure Rule 26(a)(1) Initial Disclosure on or before November 30, 2021. The parties propose the following additional deadlines for discovery and trial in this action:

| | |
|---|---|
| Cut-Off to Amend Pleadings/Join Parties: | January 20, 2022 |
| Non-Expert Discovery Cut-off: | May 20, 2022 |
| Designation of Experts/Reports: | June 20, 2022 |
| Rebuttal Experts/Reports: | July 11, 2022 |
| Expert Discovery Completion Dates: | August 8, 2022 |
| Dispositive Motions Filed By: | September 5, 2022 |
| Final Pre-Trial Conference: | December 5, 2022 |
| Trial Date: | January 9, 2023 |

Unless otherwise proposed herein, or otherwise ordered by the Court, all other applicable deadlines such as Federal Rules of Civil Procedure 26(a)(3) disclosures are per the Federal Rules of Civil Procedure.

### 2. Subjects of Discovery

The parties do not believe that a "phased" approach to discovery is warranted. The parties are in general agreement that discovery in this action will generally encompass the following topics, subject to the parties' objections: the interpretation of the parties' alleged contracts, the performance of the parties' agreements, the interpretation of alleged contracts between the parties and third parties; the performance of alleged agreements between the parties and third parties; the alleged damages and costs of defense in the underlying actions; the alleged damages to resolve, or defend against, the underlying actions; Deploy's alleged failure to pay invoices payable to PEI; Deploy's alleged failure to pay invoices payable to PEI on demand by Paychex; Deploy's exercise of its contract termination rights; and the legal fees in this action. This list is without prejudice to the parties' rights to seek discovery on issues otherwise relevant. The parties do not

admit the relevancy of any issue.  The parties reserve the right to object to each other's specific discovery requests and to the appropriateness of each other's proposed scope of discovery.

3.   Limitations on Discovery

The parties do not believe that there needs to be any limitation on discovery beyond that provided by the Federal Rules of Civil Procedure.

4.   Protocol for Inadvertent Production

The parties recognize the potential that documents that may implicate a contended privilege or other protection may be inadvertently produced.  In such instance, as early as possible after the inadvertent production issue is identified but in no event more than thirty (30) days after the document has been produced, counsel shall notify in writing all counsel of the identity of the document and basis for privilege with the same specificity as would be required on a privilege log (i.e., production number, author, recipient(s), date, and general substance).  The subject document shall not thereafter be utilized in deposition, motion, or trial, pending resolution of the issue after a meet and confer, and, if necessary, a court ruling on same.

Dated: October 20, 2021          **MORISON LAW, LLP**

By: */s/ William C. Morison*
    William C. Morison
    Attorneys for Defendant
    DEPLOY HR, INC.

Dated: October 20, 2021          **BUCHALTER**
                                 A Professional Corporation

By:  */s/ Oren Bitan*
     Oren Bitan
     Attorneys for Plaintiff
     PAYCHEX ADVANCE LLC
     DBA ADVANCE PARTNERS

*I, Oren Bitan, attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.*

By:  */s/ Oren Bitan*
     Oren Bitan