UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAYCHEX ADVANCE LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>DEPLOY HR, INC.,<br><br>  Defendant. | Case No. 21-cv-04685-WHO<br><br>**ORDER ON MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 72 |

Plaintiff Paychex Advance LLC moves for full or partial summary judgment on its claims against defendant Deploy HR, Inc. Dkt. No. 72. The dispute between these two parties is whether Deploy is required to pay Paychex amounts that Deploy would otherwise be required to pay to third-party PEI Staffing, LLC based on staffing services that PEI provided to Deploy. For the reasons explained below, Paychex's motion is GRANTED in limited part and otherwise DENIED.

## BACKGROUND

### I.   THE SSA BETWEEN PEI AND DEPLOY

It is undisputed that PEI provided staffing services to Deploy under a Subcontractor Supplier Agreement ("SSA") beginning in May or June 2017, when Deploy employees were transferred to PEI's payroll. The SSA and a related Management Services Agreement (MSA) were not signed by both PEI and Deploy until August 24, 2017, following the death of a worker (Miguel Almonte Garcia) who PEI provided to a warehouse on behalf of Deploy.

On that date, after Deploy notified PEI of Garcia's death, Deploy's CFO Jeff Mitchell forwarded the SSA and MSA to PEI's CEO with instructions to "fully execute" the agreements and to date them "7/1/17." Declaration of Jeremy Bilsky, Ex. 2 [Dkt. No. 72-1]. The SSA and MSA were signed on the same day and dated "effective" as of July 1, 2017, allegedly to cover the payroll period when PEI first provided services to Deploy. Deposition Transcript of David H.

Epstein [Dkt. No. 78-5] at 40-41; Deposition Transcript of Jeff Mitchell [Dkt. No. 78-3] at 88:10-19.  The SSA provided:

> 13. INSURANCE.
>
>   A.   Requirement. During the term of this Agreement such additional periods of time required under this section, Subcontract Supplier will maintain in full force and effect, at Subcontract Supplier's own expense, insurance coverage as specified in this section. All insurance policies will be written by a company authorized to do business in the territory and jurisdiction where the Services are performed….
>
>   B. …
>
>   C.   General Liability…Insurance will be provided with limits of liability and coverage as indicated below.
>
>   …
>
>   7) General Liability… policy limits will not be less than a combined Single Limit for Bodily Injury… of $2,500,000 per occurrence; …and $5,000,000 general aggregate….
>
>   D.   Additional Insureds. Any General Liability…policy…will name Client [WCD] and Company [Deploy]…as additional insureds, and will stipulate that the insurance afforded additional insureds will apply as primary insurance and that no other insurance carried by any of them will be called on to contribute to the loss covered thereunder…
>
>   …
>
>   J.   Certificates of Insurance. On request Subcontract Supplier shall provide Company a Certificate of Insurance evidencing the required coverage and limits and named Client and Company as additional insureds….
>
>   K.   Availability of Insurance Does Not Relieve Subcontract Supplier of Its Obligations. In no event will the coverage or limits of any insurance maintained by Subcontract Supplier under this Agreement, or the lack or unavailability of any other insurance, limit or diminish in any way Subcontract Supplier's obligations or

2

1    liability to Company and client under this Agreement.

2  SSA, Dkt. No. 72-1 [ECF pg. nos. 29-89].

3    Paragraph 14 of the SSA also provides that PEI agreed to:

> to indemnify, defend and hold harmless Company and Client and as to each of them their parents, subsidiaries, affiliates and the respective directors, officers, employees and agents of each ("the Released Parties") from and against all third party demands, claims, actions, suits, losses, damages (including, but not limited to, property damage, bodily injury and wrongful death), judgments, costs and expenses (including reasonable attorneys' fees, interest and penalties) ( collectively, "Damages") imposed on or incurred by the Released Parties arising out of the acts or omissions of Subcontract Supplier or its employees, subcontractors or agents in the performance of this Agreement.

Deploy and PEI representatives testified in either this or a related case that PEI and Deploy were operating under the terms of the SSA in May and June 2017, even though the SSA was not signed until August 2017. Epstein Depo. Tr. at 70-71; Mitchell Depo. Tr. at 71-72, 88, 103-104. PEI's CEO, Epstein, testified that since the details of the SSA were still being worked out as performance commenced, he added Deploy to PEI's workers compensation and general liability policies in May 2017 as an "additional insured." Epstein Depo. Tr. 110. In July 2017, Epstein sent what he characterized as a draft "mocked up" certificate of insurance to Deploy, outlining the contemplated insurance coverage so that (according to Epstein) the parties could review the limits and determine whether any additional or different insurance was required. Epstein Depo. Tr. at 46-57. Deploy contends that Epstein intentionally misled it by sending that email and certificate – which was not clearly marked as a draft – to convey that specific coverage had been secured for Deploy by PEI when it had not been secured. Mitchell Depo. Tr. at 79:18-23; Deposition Transcript of Robert Samet [Dkt. No. 78-7] at 9:19-10:15; *see also* Epstein Depo. Tr. 110-114.

## II. THE FSA BETWEEN PEI AND PAYCHEX'S PREDECESSOR

Paychex argues that it is entitled to payments amounting to $1,088,615.00 – covering identified invoices for staffing provided by PEI to Deploy – as a result of a 2011 Factoring and Services Agreement (FSA) that Paychex's predecessor (Advance Payroll Funding) entered into with PEI. Bilsky Decl., Ex. 1 FSA [Dkt. No. 72-1]. Under the FSA, Advance provided funds to PEI so that PEI could make payroll for individuals it had placed at worksites; in return, PEI gave

1   Advance a "continuing first priority security interest" in payments due to PEI for its staffing
2   services. Deposition Transcript of Jeremy Bilsky [Dkt. No. 72-2] at 29:9-21; Epstein Depo. Tr. at
3   169:1-22. Paychex "purchased" Advance's assets, including the FSA with PEI, in 2015. Bilsky
4   Depo. Tr. at 11:2-7; 25:16-26:15; *see also* Supplemental Declaration of Jeremy Bilsky [Dkt. No.
5   79-1] ¶ 3 & Ex. 1 (FSA).

Some of the PEI invoices from the relevant time period in 2017 were paid directly by Deploy to Paychex and some were paid by Deploy to PEI, depending on whether the invoices sought payment for wages and employer taxes or workers compensation and administrative fees. Epstein Depo. Tr. at 150:2-152:18; 157:2-160:2. Payments on PEI invoices for processed payroll were sent by Deploy to Paychex until July 2019. It is undisputed that Deploy did not pay in full seven PEI invoices totaling approximately $1,021,730.97. Deposition Transcript of Cheryl Hughes [Dkt. No. 72-2] at 54:1-8. PEI has, however, made periodic payments to Paychex in the interim, bringing the current balance owed to $769,689.00. Bilsky Decl., Ex. 4.

### III. RELATED LITIGATION

Following the death of Garcia in August 2017, his estate filed a wrongful death claim in Pennsylvania state court in 2019 ("*Garcia*" action). That action is pending. PEI has moved for summary judgment, arguing that although it was Garcia's employer at the time of his death, it is immune from tort liability under Pennsylvania's workers' compensation scheme. Request for Judicial Notice [RJN, Dkt. No. 73], Ex. 2. Deploy is a named defendant in the *Garcia* matter, funding its own representation.

In June 2019, PEI's insurer filed a declaratory relief action in Maryland state court, seeking a determination that it had no duty to provide coverage to Deploy (or the warehouse where Garcia died) in the *Garcia* matter. RJN, Ex. 4. The insurer secured summary judgment in its favor: the Maryland court determined that because neither the SSA nor the MSA were signed until after Garcia's death, and because PEI's policy provided that an "additional insured" could be added only where "required by a written contract executed prior" to an occurrence under the policy, the insurer had no duty to defend or indemnify Deploy or the warehouse in the *Garcia* action. RJN. Ex. 6. Deploy has appealed that determination and the appeal is pending.

4

## IV. PROCEDURAL HISTORY

In the operative complaint, Paychex alleges the following causes of action against Deploy: (i) Open Account; (ii) Services Rendered; (iii) Account Stated; and (iv) Breach of Contract. Second Amended Complaint, Dkt. No. 37.  In response, Deploy filed a Third Party Complaint, asserting cross-claims against third-party PEI (and its two principals) for: (i) Breach of Contract, against PEI; (ii) Express Contractual Indemnity, against PEI; (iii) intentional misrepresentation and deceit, against PEI and the individuals associated with PEI; (iv) violation of Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962(c), against PEI and the individuals; and (v) conspiracy to violate RICO, 18 U.S.C. § 1962(d), against PEI and the individuals.  Dkt. No. 41.  The intentional misrepresentation and RICO claims are based on Deploy's theory that on July 31 2017, Epstein emailed Deploy a fraudulent certificate of insurance to convey to Deploy that specific insurance was put in place by PEI when it had not.

Deploy opposes full or partial summary judgment, arguing that disputes of material fact preclude full or partial summary judgment because: (i) Paychex has failed to establish with admissible evidence that it is a "secured" party or assignee of PEI's receivables from Deploy and (ii) Deploy is due an offset from PEI because, contrary to the SSA, PEI never added Deploy as an insured to its policies, forcing Deploy to defend itself in *Garcia* wrongful death matter as well as in the Maryland insurance coverage dispute.  Accordingly, Deploy is allowed to offset any amounts otherwise due under the FSA for those expenses.

## LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id*. The party

5

1    opposing summary judgment must then present affirmative evidence from which a jury could
2    return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).
3    On summary judgment, the court draws all reasonable factual inferences in favor of the
4    non-movant. *Id*. at 255. In deciding a motion for summary judgment, "[c]redibility
5    determinations, the weighing of the evidence, and the drawing of legitimate inferences from the
6    facts are jury functions, not those of a judge." *Id*. However, conclusory and speculative testimony
7    does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See*
8    *Thornhill Publ'g Co., Inc. v. GTE Corp*., 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

Deploy does not challenge or engage with the legal requirements of Paychex's "common count" claims. Instead, it argues that Paychex has not demonstrated that it is a secured creditor under the FSA. Even if it is, Deploy asserts that it is entitled to offset any amounts due to PEI (and hence Paychex) because of Deploy's cross-claims against PEI.

**I.    PAYCHEX'S RIGHTS UNDER THE FSA**

Deploy contends that material facts are in dispute because: (i) Paychex did not produce with its motion the contract between it and its predecessor (Advance), or other admissible proof that Paychex bought or secured the rights to the FSA; (ii) Paychex failed to provide Deploy with the required written "notice of assignment" of the FSA receivables. Neither argument has merit.

Paychex has provided sufficient, admissible evidence that it purchased the rights to the FSA through an Asset Purchase Agreement (APA) it executed with Advance. Supp. Bilsky Decl., Ex. 1 & Schedule 3.10 (identifying FSA between PEI and Deploy). While Deploy is correct that Paychex did not attach the APA to its opening motion, excerpts from the APA were produced in discovery and Paychex attaches relevant excerpts of the APA with its Reply. Supp. Bilsky Decl., Ex. 1. Although Deploy contends that the APA was hard to secure from Paychex in discovery and complains that only excerpts of the APA were provided, Deploy does not point to any evidence demonstrating that the APA did not cover the FSA that Advance entered into with PEI or that the

6

FSA did not cover the monies owed to PEI under the SSA.[1]  The unrebutted evidence is that Paychex secured rights to the FSA through the APA and is a secured creditor with respect to monies owed to PEI under the SSA.  Deploy's best evidence and related admissibility objections to the evidence regarding the APA are OVERRULED.

Deploy also agues that even if Paychex acquired creditor status through the FSA, Paychex's failure to provide notice to Deploy that it was a secured creditor under section 9406(b) of the California Commercial Code means that Paychex has no rights to the monies Deploy holds for work performed by PEI.  Deploy contends that it received no notice of Paychex's asserted rights as a creditor until this litigation.  It relies on the deposition testimony of Mitchell, who testified that "he did not recall" receiving and does not know whether anyone at Deploy received formal notice regarding the FSA obligations from Advance or Paychex.  Oppo. at 10; Mitchell Depo. Tr. at 120-122, 125-126.  But Mitchell testified that he knew Advance was a "lender" used by PEI to cover payroll and admitted that Deploy would pay some portion of invoices to Advance/Paychex directly when requested to do so by PEI.  Mitchel Depo. Tr. at 122, 129-131, 135.

At base, notice is a non-issue.  Section 9406 addresses when a debtor is required to discharge an obligation by paying an assignee instead of the assignor upon notice of assignee's rights.  Paychex is not arguing that Deploy should have sent payments on specific invoices to Paychex when it instead sent them to PEI.  Rather, Paychex is arguing that monies currently held by Deploy for services performed by PEI should now be paid to Paychex.  And even if some form of notice was required, Deploy does not explain why its paying Paychex directly on invoices for services provided by PEI did not constitute adequate notice while the parties were still performing under the SSA or, ultimately, why the "notice" provided by this litigation and the discovery to date does not suffice.

## II. DEPLOY'S RIGHTS UNDER THE SSA

Deploy argues that even if Paychex can be considered a secured creditor under the FSA,

---

[1] Any alleged deficiencies in the way the APA was produced by Paychex in discovery could have and should have been raised by Deploy and resolved during the fact discovery period.

1  Deploy has rights to refuse to pay Paychex on account of PEI's services given: (i) PEI's breach of
2  the oral agreement to secure insurance coverage (a material term of the SSA, although the SSA
3  was not signed prior to the Garcia accident) and (ii) the breach of the signed SSA by PEI's failure
4  to indemnify and defend Deploy in this, the *Garcia*, and the coverage litigations as required by the
5  SSA.

### A. Breach of Contract; Insurance Coverage and Indemnity

Deploy argues that it has a right to offset the amounts it would otherwise owe to PEI because PEI breached the SSA by failing to add Deploy as an insured to its liability policy and failing to defend or indemnify Deploy in the *Garcia* and insurance coverage actions, as well as for a related Department of Justice/Department of Transportation investigation into PEI. Deploy contends that it had an oral contract encompassing the material terms of the SSA that was in effect when PEI started to provide services to Deploy in May/early June 2017. It cites to the deposition testimony of Epstein (PEI's CEO) and Mitchell (Deploy's CFO) that the essential terms of the SSA had been agreed to and, as a result, PEI started to provide services to Deploy. It points to evidence that the SSA was not signed until late August because of narrow disputes over profit margins on the SSA. Despite those limited disagreements, the parties began performance and PEI received payment from Deploy for services performed the morning of the Garcia accident, prior to Garcia's accident. Epstein Depo. Tr. at 69-77. Deploy notes that PEI's obligation to secure insurance did not hinge on the terms of any insurance policy carried or sought by PEI (for example, the Philadelphia policy at issue in the insurance coverage litigation that required a written and executed agreement to provide coverage prior to an occurrence). It also argues that it relied to its detriment on the "false" certificate of insurance PEI sent through interstate commerce to Deploy on July 31, 2017.

Paychex responds that the breach of contract claims, whether based on purported failure to secure insurance coverage or failure to indemnify, fail because the accident occurred before the SSA was signed and executed. It argues that PEI is "immune from third-party liability" for indemnity claims related to *Garcia's* death under California's workers compensation scheme absent a "written agreement so to do executed prior to the injury." *See* California Labor Code §

8

3864.[2]  The only relevant written agreement here was signed after Garcia's death.  There is no dispute that Garcia's received a workers' compensation award from PEI's carrier.  Therefore, Paychex contends that the oral SSA cannot support a breach claim against PEI for PEI's failure to secure insurance coverage or indemnify stemming from damages related to the *Garcia* accident.

Paychex does not address or provide authority to explain why PEI would not still be potentially liable for failure to indemnify Deploy for its expenses in litigating the insurance coverage action in Maryland state court that arose after the SSA was signed and effective.  The insurance coverage action is related to the Garcia accident and the *Garcia* case; Deploy's attempt to secure coverage under PEI's insurance policy, as well as the resulting insurance coverage declaratory relief action, occurred after the SSA was signed and operative.  Paychex cites no authority that would stretch the worker's compensation exclusivity provisions on which it relies to bar the suits regarding other litigation between the parties over amounts allegedly owed by Deploy to PEI for work under the SSA.[3]

Paychex is correct that PEI cannot recover under a breach theory based on failure to secure insurance or to indemnify Deploy for the *Garcia* action or for the part of Deploy's defense

---

[2] Deploy argues that there is no basis for California law to apply, given the work was performed in Pennsylvania.  However, the SSA under which the parties were operating expressly provided that its terms shall be governed by California law.  *See* SSA, ¶ 30.  Regardless, Pennsylvania, where the accident occurred, has a similar exclusivity rule to California's.  *See* 77 Pa. Stat. Ann. § 481:
> (a) The liability of an employer under this act shall be exclusive [].
> (b) In the event injury or death to an employee is caused by a third party, then such employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, [] shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.

[3] On its face, section 3864 limits liability of an employer to a third party only for costs related to judgment or settlement in a case brought by the injured party/estate or the employer regarding an underlying accident that was covered by the workers compensation scheme.  *See* Cal. Lab. Code § 3864: "Liability to reimburse or hold third person harmless on judgment or settlement . . . If an action as provided in this chapter prosecuted by the employee, the employer, or both jointly against the third person results in judgment against such third person, or settlement by such third person, the employer shall have no liability to reimburse or hold such third person harmless on such judgment or settlement in absence of a written agreement so to do executed prior to the injury."

9

1    incurred in filing and litigating its suit against PEI in this District (as Deploy's affirmative
2    Complaint is based on alleged "damages" from Deploy's defense of the *Garcia* action). *See* Case
3    No. 19-cv-06061-WHO *Deploy HR, Inc. v. Pei Staffing, LLC*. (asserting claims for breach of
4    contract for failure to secure insurance coverage and for failure to indemnify Deploy in the *Garcia*
5    action). But the Complaint in Case No. 19-cv-06061 also seeks damages for PEI's failure to
6    secure insurance, causing Deploy to defend itself in the insurance coverage action. Compl. in
7    Case No. 19-cv-06061, ¶ 20. Similarly, Paychex provides no authority that the worker's
8    compensation exclusivity provisions extinguish Deploy's right to indemnity from PEI stemming
9    from Deploy's defense of this action, brought by Paychex against Deploy.

10   In sum, Paychex has demonstrated that Deploy cannot withhold and is not entitled to retain monies otherwise due to PEI on the theory that PEI failed to indemnify or hold Deploy harmless (through insurance of otherwise) for its defense of the *Garcia* action. Paychex has not demonstrated that Deploy is not entitled as a matter of law to withhold monies otherwise due to PEI to cover Deploy's costs incurred in defending itself against the insurance coverage action and some part of Deploy's litigation and defense of the actions pending in this court.

### B.     Collateral Estoppel – offset defense and cross-claims for breach

Paychex also argues that Deploy is collaterally estopped from arguing that PEI was required to insure Deploy and provide a defense to the *Garcia* matter given the Maryland court's determination that Deploy could not be an "additional insured" under PEI's policy. As noted above, that conclusion was based on language from PEI's policy that allowed for additional insured-entities only where a written contract existed prior to an occurrence (*i.e.*, Garcia's death). Paychex argues not only that there is no offset and that Deploy must pay the amounts owed to Paychex, but that Deploy's breach of contract claim against PEI – asserted as a cross-claim in this case – fails as a matter of law.

The only thing considered in the Maryland action was the policy language of PEI's insurance policy with its insurer. The Maryland court determined that the language did not cover Deploy as an "additional insured" given the lack of a signed agreement prior to Garcia's death. The Maryland court did not reach whether PEI and Deploy were operating under an enforceable

oral contract, by which PEI was supposed to have secured insurance coverage for Deploy, and did not reach whether the SSA's indemnity provision nonetheless required PEI to indemnify Deploy. Collateral estoppel – whether considered under California law or Pennsylvania law – does not bar Deploy's claims.

### III. CROSS-CLAIMS FOR INTENTIONAL MISREPRESENTATION AND DECEIT AND RICO

Paychex argues that Deploy's cross-claims against PEI for intentional misrepresentation and deceit fail as a matter of law – and do not provide a basis to withhold the PEI funds otherwise owed to Paychex – because Deploy has no evidence showing that it was damaged by any misconduct of PEI, given that neither side signed the SSA until after Garcia's death.

Paychex's argument ignores Deploy's theory that it was lulled into not being concerned by the absence of a signed SSA by both the parties' commencement of operation under the SSA before it was signed and the "fraudulent" evidence of insurance coverage sent to Deploy by Epstein. The certificates – one provided by PEI to Deploy in May showing coverage for the WCD warehouse where work was being performed and the other in July (a mock-up according to PEI, but evidence of actual coverage according to Deploy) – helped induce Deploy to continue operating under the oral contract. Under Deploy's theory, by July 31, 2017, it reasonably understood that it had coverage and continued operations with PEI under that understanding prior to the *Garcia* accident. Whether Deploy's reliance was reasonable and whether Deploy would have acted differently but for PEI's representations raise disputes of material fact that preclude summary judgment.

Paychex also argues that given Deploy's characterization – both in the Maryland coverage action and this case – that the parties were operating under an oral contract based on the agreed-to material terms of the SSA by May/June 2017, the allegedly false insurance certificates sent in July 2017 could not have induced Deploy to do anything and without inducement Deploy cannot prove damages. However, Deploy alleges that the false representations of insurance coverage encouraged Deploy to continue to operate under the oral contract. Had Deploy known about the lack of coverage, Deploy argues, it would have taken steps to protect itself or stop performing

11

1  under the oral contract.[4]  These competing assertions rest on disputes of material fact precluding
2  summary judgment.
3       For similar reasons, I reject Paychex's argument that Deploy's fourth and fifth claims of
4  relief against PEI – for civil RICO and conspiracy to violate RICO – fail as a matter of law
5  because Deploy cannot show damage stemming from PEI's alleged fraudulent misconduct.
6  Deploy's potential damages from the fraud-based RICO claims are the costs of defending the
7  insurance coverage action, the costs of defense in this case, and some component of the costs
8  incurred in litigating Case No. 19-cv-06061.

## CONCLUSION

10       For the foregoing reasons, I find that Paychex has standing as a secured creditor to assert
11  claims against Deploy related to PEI's rights under the SSA.  Paychex's motion for summary
12  judgment on its affirmative claims for Open Account, Services Rendered, Account Stated, and
13  Breach of Contract is DENIED: there are disputes of material fact regarding what amounts (if any)
14  Deploy is entitled to withhold under its claims in Case No. 19-cv-06061-WHO and its cross-
15  claims in this case.
16  **IT IS SO ORDERED.**
17  Dated: December 2, 2022



William H. Orrick
United States District Judge

---

[4] Deploy also notes that it incurred expenses in responding to a Department of Justice/Department of Transportation investigation into PEI. Oppo. at 17.  Paychex argues that Deploy's failure to break down its defense costs for the actions in this District and the federal investigations means summary judgment should be granted in its favor. Reply at 10 & n.5.  Deploy has, however, provided some evidence of its costs in these actions.  Oppo. at 17; Morrison Decl., Ex. I. (citing deposition testimony from Deploy). That is sufficient at this juncture.